IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHEASTERN DIVISION

| | |
|---|---|
| Norman G. Carr, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:09-cv-86 |
| ) | |
| Michael J. Astrue, Social Security ) | |
| Administration Commissioner, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Norman G. Carr (hereinafter "Carr," "plaintiff," or "claimant"), who is proceeding pro se, initiated this action under 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-433, and denying his application for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383c.  (Tr. 8-19).  Both parties have moved for summary judgment.  (Doc. #7, Doc. #9).

**Summary of Recommendation**

The magistrate judge finds the Administrative Law Judge ("ALJ") overlooked a treating physician's opinion in determining Carr's residual functional capacity ("RFC").  (See Tr. 548, 674).  It is **RECOMMENDED** that the decision of the Commissioner be **REMANDED** for consideration of the evidence.

**Background**

Carr protectively filed his applications for disability insurance benefits and supplemental security income on July 25, 2006 under Title II of the Social Security Act, 42 U.S.C. §§ 401-433,

and under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383c. He alleged a disability onset date of March 17, 2006. (Tr. 159, 126). Carr's applications were denied initially and on reconsideration. He requested a hearing, which was held on February 9, 2009. Carr appeared with his attorney and testified at the hearing. Vocational Expert Dr. David C. Perry also testified. The Administrative Law Judge ("ALJ") issued his decision on March 11, 2009, finding plaintiff was not disabled. (Tr. 8-19). Carr requested review of the ALJ's decision and submitted a letter of contentions from his former attorney to the Appeals Council. (Tr. 266-72). The Appeals Council considered the letter, finding it did not provide a basis for changing the ALJ's decision. (Tr. 1-3). The Appeals Council denied Carr's request for review, making the decision of the ALJ the Commissioner's final decision.

Carr was 51 years old at the time of the hearing. (Tr. 29). He completed high school and some college. (Tr. 216). He has worked as a car salesman, safety officer, security guard, retail stocker, mental health technician, and aircraft production staff worker. (Tr. 206). Carr alleges he is disabled due to depression, back pain, an artificial left elbow, an artificial left hip, spots on his lungs, knee pain, ankle pain, and kidney disease. (Tr. 205).

**Legal Standard**

Upon review of the pleadings and transcript of the record, the court can affirm, modify, or reverse the decision of the Commissioner, with or without remanding the cause for a rehearing. 42 U.S.C. § 405(g). To affirm the Commissioner's decision, the court must find substantial evidence appearing in the record as a whole supports the decision. See id.; Cruse v. Bowen, 867 F.2d 1183, 1184 (8th Cir. 1989). "This standard requires a more searching review than the substantial evidence standard, and [the court will] take into account record evidence that fairly detracts from the ALJ's decision." Tilley v. Astru, 580 F.3d 675, 679 (8th Cir. 2009)

(citing Minor v. Astrue, 574 F.3d 625, 627 (8th Cir. 2009)).  The court must "take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contradictory."  Minor, 574 F.3d at 627 (citing Wilson v. Sullivan, 886 F.2d 172, 175 (8th Cir. 1989)) (quoting Jackson v. Bowen, 873 F.2d 1111, 1113 (8th Cir. 1998)).  See also, Burress v. Apfel, 141 F.3d 875, 878 (8th Cir. 1998) ("As this court has repeatedly stated, the 'substantial evidence in the record as a whole' standard is not synonymous with the less rigorous 'substantial evidence' standard."); Gavin v. Heckler, 811 F.2d 1195, 1199 (8th Cir. 1987) ("It is not sufficient for the district court to simply say there exists substantial evidence supporting the [Commissioner] and therefore the [Commissioner] must be sustained.").

## Discussion

The ALJ employed the familiar five-step test to determine whether Carr was disabled.[1]  The ALJ determined plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability.  (Tr. 10).  He found Carr has the following severe impairments which do not meet or equal any listed impairment: "a history of fracture of left hip due to avascular necrosis (status post left total left hip arthroplasty); COPD; left subacromial impingement; status post left elbow arthroplasty following multiple surgeries; and degenerative changes at L4-L5 (20 CFR 404.1521 *et seq.* and 416.921 *et seq.*)."  (Tr. 10).  The ALJ found Carr's coccidiomycosis, right clavicle fracture, and mental impairments including his depression, personality disorder, alcohol dependance, and polysubstance abuse to be non-severe impairments.  (Tr. 11-13).  He

---

[1]The five steps are:  (1) whether the claimant is engaged in any substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App.1; (4) whether the claimant can return to his past relevant work; and (5) whether the claimant can adjust to other work in the national economy.  20 C.F.R. § 404.1520(a)(5)(i)-(v).

determined plaintiff is capable of performing past relevant work as a car salesman, safety officer, and as a security guard. (Tr. 17).

Plaintiff alleges the ALJ committed the following errors: failing to find his mental impairments and right clavicle fracture are severe impairments, failing to accept as credible his subjective complaints, failing to properly determine his residual functional capacity ("RFC"); and failing to give controlling weight to his treating physicians. Plaintiff also alleges the ALJ erred in finding he can perform his past relevant work as a car salesman, safety officer, and as a security guard.

**Severe Impairments**

"An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." Kirby v. Astru, 500 F.3d 705, 707 (8th Cir. 2007). The plaintiff has the burden to establish that his impairments are severe. Id. "Severity is not an onerous requirement for the claimant to meet, . . . but it is also not a toothless standard, and [the court has] upheld on numerous occasions the Commissioner's finding that a claimant failed to make this showing." Id. at 708 (internal citation omitted).

I. Mental Impairments

The ALJ evaluates the severity of a mental impairment by gauging its impact on four functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3). If the ALJ rates the claimant's limitations as "none" or "mild" in the first three areas, and "none" in the fourth area, the ALJ will generally conclude the mental impairment is not severe, unless the

evidence indicates there is more than a minimal limitation in the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520a(d)(1).

The ALJ found Carr's mental impairments do not cause more than a minimal limitation in his mental ability to perform basic work activities.  (Tr. 12).  He found Carr has mild limitations in activities of daily living, social functioning, and in concentration, persistence, or pace.  (Tr. 12).  He also found Carr has not had any repeated episodes of decompensation when alcohol is not considered.  (Tr. 12).

Carr contends his mental impairments are severe because he has had repeated episodes of decompensation.  "The term repeated episodes of decompensation, each of extended duration . . . means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks."  20 C..F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(4).  The record does not appear to support a finding of repeated episodes of decompensation of extended duration.  Since the alleged onset date of disability, Carr was hospitalized several times for alcohol detox, but none of the hospitalizations were of extended duration.  (Tr. 960-64, 992-94, 997-1000, 1086-87).  Furthermore, Carr contends his alcohol abuse does not interfere with his ability to perform work (Doc. # 7, pg. 3), and Carr does not take issue with the ALJ's finding that he has only mild limitations in activities of daily living, social functioning, and in concentration, persistence, or pace.  The record as a whole reflects that Carr does not have more than minimal limitations in his mental ability to perform basic work activities, and he is not significantly limited by his mental impairments.  There is substantial evidence in the record as a whole to support the ALJ's determination that plaintiff's mental impairments are not severe.

    II.    Clavicle Fracture

Carr contends his right clavicle fracture has not healed because of the necessity for him to use a cane in his right hand.  He claims "[t]he use of the cane caused the fracture to separate

and the plate to bend." (Doc. # 7, pg. 3). Carr underwent open reduction internal fixation on his right clavicle fracture in October 2008. (Tr. 1105). He was given temporary limitations on performing any lifting, pushing, or pulling with his right arm. (Tr. 1105). The ALJ found there was no objective indication in the record that the limitation was going to last for a consecutive 12 month period, and the impairment is therefore non-severe. The ALJ's finding is supported by substantial evidence in the record as a whole because there is no objective evidence to indicate the impairment would meet the duration requirement. See 20 C.F.R. §§ 404.1509, 416.909 (impairment must have lasted or must be expected to last for a continuous period of at least 12 months to meet the duration requirement).

### Subjective Complaints

"An adjudicator may not disregard a claimant's subjective complaints solely because the medical evidence does not fully support them," or solely based on personal observations. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). Several factors must be considered in analyzing a plaintiff's subjective complaints:

> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: 1. the claimant's daily activities; 2. the duration, frequency and intensity of the pain; 3. precipitating and aggravating factors; 4. dosage, effectiveness and side effects of medication; 5. functional restrictions.

Id. "Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole." Id.

The ALJ determined Carr's statements concerning the intensity, persistence and limiting effects of his symptoms "are not credible to the extent they are inconsistent with the . . . residual

functional capacity assessment." (Tr. 14). The ALJ stated the following facts support his finding: Carr is not as limited, elbow-wise, as he claims because after his elbow replacement he worked in a "relatively physically demanding capacity;" Carr is not as limited, hip-wise, as he claims because after his hip replacement x-rays and progress notes reveled that he was "getting along well with just a mild limp," the alignment was "looking good with no evidence of loosening," and Carr stated at the time "he had only minimal pain and discomfort;" Carr complained of left distal thigh pain in August of 2008, however, his complaints "were not particularly consistent with the objective findings;" at the hearing Carr testified he needed to frequently lie down throughout the day, but he never complained about it to any physician; Carr testified he experiences shortness of breath and fatigue, but "the objective findings have not been particularly significant," except for one time when he had bronchitis and was prescribed Albuterol; and although Carr testified he relies on others to do his chores, "there is really no objective evidence to support a conclusion that the claimant could not tend to these basic chores himself." (Tr. 14-16).

     An ALJ need not discuss every Polaski factor, but must take each one into account. Casey v. Astrue, 503 F.3d 687, 695 (8th Cir. 2007). The ALJ did not explicitly discuss the Polaski factors, and the court can not definitively conclude the ALJ considered all of the relevant factors in analyzing Carr's subjective complaints. Despite the court's concern, "[w]here adequately explained and supported, credibility findings are for the ALJ to make." Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000)(citation omitted). The ALJ may discount a claimant's subjective complaints of pain if inconsistencies are apparent in the evidence as a whole. Id. There is substantial evidence in the record as a whole to support the ALJ's determination that plaintiff's subjective complaints are not fully credible.

**Residual Functional Capacity and Treating Physicians' Opinions**

Dr. Schall, plaintiff's treating physician at Valley Bone and Joint Clinic, drafted a letter on February 8, 2009 in which he opined Carr is not able to perform any prolonged standing or walking, and he can not lift any more than approximately five pounds.[2] (Tr. 1105). The ALJ found that since Dr. Schall had not been actively treating Carr for his elbow impairment, his opinion regarding his lifting capabilities is not entitled to significant weight. (Tr. 16-17). The ALJ also noted Carr reported working at a heavy exertional level after his elbow replacement. (Tr. 17). The ALJ found Dr. Schall's opinion regarding Carr's ability to stand and walk for prolonged periods is also not entitled to significant weight because it is based on Carr's subjective complaints, which the ALJ found not fully credible. (Tr. 17).

The ALJ determined Carr can occasionally lift or carry 20 pounds, and frequently lift or carry 10 pounds. He also determined Carr can sit, stand or walk for six hours in an eight-hour workday with normal breaks. The ALJ noted that on February 21, 2005, two months after his elbow replacement, Carr was placed on a lifting restriction of two pounds frequently and ten pounds maximum by Dr. Thompson at Valley Bone and Joint Clinic. (Tr. 1029). The ALJ stated "there was no indication that this post-surgical instruction was meant to be permanent." (Tr. 16). However, it appears the ALJ overlooked the fact that Carr was placed on permanent lifting restrictions due to his elbow replacement by Dr. Morrey, who performed the orthopedic surgery

---

[2] In his opinion issued one day before the hearing, Dr. Schall noted he was treating Carr's hip condition, not actively treating his elbow replacement "but just due to the nature of the fact that this is an elbow replacement, this does limit him with any kind of lifting, pushing or pulling with that elbow. He is not able to do any type of repetitive activity with the elbow or lift any more than approximately 5-pounds . . . In regards to his elbow, his limitations will be permanent." (Tr. 1105).

at Mayo Clinic.  On December 20, 2004, Dr. Morrey stated, "[Carr] has lifetime restrictions of no more than 10 pounds in a single event, with left elbow, and no more than lifting 4 pounds repetitively with the left elbow." (Tr. 548).  On March 3, 2006, Dr. Morrey saw Carr for a subsequent visit.  Dr. Morrey noted that Carr had returned to work as an orderly in a mental hospital, and he "had one episode where he had to catch a patient who was falling." (Tr. 674).  Although Dr. Morrey found Carr was doing "exceptionally well," he recommended that Carr "should continue to limit his activities to the stated and expected limitation." (Tr. 674).

      The ALJ's opinion is devoid of any reference to Dr. Morrey's opinion that Carr has a lifetime lifting restriction of four pounds frequently and ten pounds occasionally, or Dr. Morrey's subsequent recommendation that Carr continue to abide by the lifetime restriction.  Furthermore, Dr. Schall's opinion as to Carr's lifting restriction, which the ALJ found not entitled to significant weight, is consistent with Dr. Morrey's opinion, and is also materially consistent with Dr. Thompson's opinion that Carr is limited to lifting two pounds frequently and ten pounds occasionally, which the ALJ found not to be a permanent restriction.  "Generally, the more consistent an opinion is with the record as a whole, the more weight [an ALJ] will give to that opinion." 20 C.F.R. § 404.1527(d)(4).  Carr reported on a questionnaire that he worked at a heavy exertional level after his elbow replacement (Tr. 223), but the ALJ did not question him about this response.  Despite Carr's report, the ALJ should not have completely overlooked Dr. Morrey's opinion in determining Carr's RFC.  On remand, the ALJ should consider Dr. Morrey's opinion as to Carr's lifetime lifting restriction, as well as Dr. Schall's and Dr. Thompson's consistent opinions, in determining Carr's RFC.

**Past Relevant Work**

The ALJ determined Carr is capable of performing his past relevant work as a car salesman, a safety officer, and as a security guard.  Carr contends the ALJ failed to consider his past relevant work as actually performed.  Given the recommendation that the case be remanded for reconsideration of Carr's RFC, the court need not address Carr's argument regarding his past relevant work because on remand, the ALJ will determine what work, if any, Carr can perform in the national economy based on his revised RFC.

**Conclusion**

The ALJ's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.  <u>Mitchell v. Shalala</u>, 25 F.3d 712, 714 (8th Cir. 1994).  After considering the errors alleged by Carr and the record as a whole, it is **RECOMMENDED** that plaintiff's motion for summary judgment (Doc. #7) reversing the ALJ's decision be **DENIED**, but that the case be **REMANDED** for consideration of the treating physicians' opinions in determining Carr's RFC.  It is further **RECOMMENDED** that defendant's motion for summary judgment (Doc. #9) be **DENIED**.

**Notice of Right to Object**

Pursuant to Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1 (D)(3), any party may object to this recommendation within fourteen (14) days after being served with a copy.

Dated this 25th day of June, 2010.

    /s/ *Karen K. Klein*
    Karen K. Klein
    United States Magistrate Judge